**Dahiya Law Offices LLC**
**350 Broadway Suite 412**
**New York New York 10013**
Tel: 212 766 8000
Fax: 212 766-8001

July 24, 2011

Marylou Martin, Esq.
United States Trustee Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Fax: 718-422-4992

Retainer Issue

Dear Ms. Martin:

      Our judge, Hon. Carla Craig, directed me to deposit the retainer with your office. Please accept the retainer, however I demand return of the same, for the Judge's directions were inconsistent with New York State laws regulating practice of law, conduct of attorneys and bankruptcy code, thus chilling advocacy and crippling the office functioning, jeopardizing client's cases.

### A.    Advance Payment Retainer and New York State Law.

      Leonid Chatkhan, husband of Ms. Irina Chatkhan, had given an advance retainer to make the undersigned available for the case and commit for the purpose of her case. I did not escrow that amount and as I was not expected or suppose to do so. There is no doubt that Attorney fees paid from the bankruptcy estate are subject to regulation under the Bankruptcy Code and the Bankruptcy Rules, and disbursements from the estate for attorney fees are carefully supervised by the bankruptcy courts. However this retainer in question was not from property of the estate and could not be.

This court used a wrong standard and misapplied the law. Sections 330 and 331 of the bankruptcy code only applies to payments from the property of the estate. Professionals paid from non-estate sources are monitored and governed under 11 U.S.C. § 329.

I deposit this money to show compliance with the judge directions-- directions of the court, however wrong must be complied with. "It is a well-established "basic proposition that all orders and judgments of courts must be complied with promptly" and that while a party has a right to appeal the order, "absent a stay, he must comply promptly with the order pending appeal." Maness v. Meyers, 419 U.S. 449, 458, 95 S. Ct. 584, 42 L. Ed. 2d 574 (1975); McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988) ("An order issued by a court must be obeyed, even if it is later shown to be erroneous.") *United States v. Miller*, 626 F.3d 682, 689 (2d Cir. Vt. 2010)

However what transpired in the court hearing, with Chapter 7 Trustee raising the spectrum of escrow account and disciplinary committee referrals clearly shows ignorance and capacity to hurt the attorneys for reasons that are unfounded in law or any guidelines. There is nothing in the bankruptcy code or New York State Ethics mandating that attorney's fees be escrowed or permission be obtained from the court to use the said funds whose sources are clearly non-estate.

If not Congress mandated laws, then local rules of this district must have clear proscriptive or prescriptive guidelines if a particular compliance is expected. There is no prohibition against use of attorneys fees whose sources are non estate, there is not even a guideline to refer to. Court cannot punish and put attorneys in situation when they have not been for-warned. Law is a prediction. If there is no prediction, then there is no conformity in advance (Wendell Holmes in his essay 'The Path of the Law' that, "The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law.")

This court, United States Bankruptcy Court, Eastern District of New York has no guideline or local rules dealing with non estate funding of retainer while dealing with issue raises some serious questions regarding creating serious dilemma for attorneys and their professional pursuits. Law or its enforcement, is not meant to surprise people in unwarranted acquiescence.

Historically and now, attorney fees have been regulated by the sovereign states. There are no express State laws codifying the fees structure or amount, it is primarily left to the intention of the parties, reflected by express or implied agreement.

All statutes establishing or regulating the costs or fees of attorneys, solicitors and counsel in civil actions, and all existing rules and provisions of law, restricting or controlling the right of a party to agree with an attorney, solicitor or counsel, for his compensation, are repealed; and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties. See Field Code of 1848.

What is the law for retainer in New York? Is a retainer to be escrowed in New York—NO! Only if it is the intention of the parties to escrow, then that amount shall be escrowed. In New York, lawyers are not required to place advance fee payments in their escrow accounts but may, instead, deposit them in their general funds. In 1985, the New York State Bar Association's Committee on Professional Ethics confirmed that lawyers are not required to deposit advance fee payments in escrow. The Committee said that advances paid to the lawyer are not "funds of a client. See, NYSBA Ethics Opinion 570. <u>Notably, the Committee held that advance fees are not client funds, even though a portion of these fees may be refundable if the lawyer does not earn the full amount.</u> NYSBA Ethics Opinion 570 has served for many years as clear and largely uncontroversial guidance for the New York Bar. At

3

least one other ethics committee has held that lawyers are not required to escrow advance fee payments. See, Bar Association of Nassau County, Committee on Professional Ethics, Opinion 88-28 (1988). ("A lawyer who receives a retainer fee to be credited against hourly charges may deposit the fee in a business account and need not put the money in an escrow or attorney trust account."). Till today—No New York has held that the advance retainer be put in escrow account.

New York State Bar Association, Committee on Professional ethics in its opinion 816-10/26/07 made the following remarks:

> Since 1985, we have cited N.Y. State 570 on several occasions.[1] N.Y. State 570 has also been cited with approval by the Appellate Division, Fourth Department and the New York City Bar ethics committee.[2] The validity of such an advance payment retainer has also been recently recognized by the Supreme Court of Illinois.[3]
>
> In Opinion 570, we noted that "it appears that the drafters of the Code of Professional Responsibility did not consider advance payments of fees to be client funds necessitating their deposit in the a trust account." Although DR 9-102 has been substantially amended since 1985, the changes do not affect the reasoning of that opinion. DR 2-110(A)(3) requires a lawyer who withdraws from representing a client to "refund propmptly any part of a fee paid in advance that has not been earned." As we observed in Opinion 570, this provision does not require that the advance be deposited in a client trust account until earned. This conclusion is supported by the language in

---

[1] See e.g. N.Y. State 599 (1989) (discussing nonrefundable minimum fee provisions); N.Y. State 693 (1997); N.Y. State 764 (2003).
[2] See Matter of Aquio, 162 A.D. 2d 58, 560 N.Y.S. 2d 583 (4th Dept. 1990) ("Moneys advanced by clients for disbursement need not, unless expressly agreed, be held in trust and may be placed in general account.") N.Y. City 2002-2
[3] Dowling v. Chicago Options Associates, Inc. __NE 2d ____, 2007 WL 1288279, at *7 (Ill. May 3, 2007) ( "we recognize advance payment retainers as one of the three retainers available to lawyers and their clients").

DR 2-110 (A), which still separately classifies fee advances and client property. DR 2-110(a)2 requires a lawyer planning to withdraw from representing a client to "deliver to the client all papers and property to which the client is entitled" while DR 2-110 (A)(3) separately provides for the refund of any unearned "fee paid in advance." In sum, the standards delineated in N.Y. State 570 for advance payment retainers are still valid today.

We note that advance payment retainer agreements, like any other fee agreement between a lawyer and a client must be "fair, reasonable, and fully known and understood by the client."[4] These agreement must also comply with other relevant provisions of the Code. In this respect, we construe DR 9-102 to require the lawyer to maintain complete records of any advance payment retainer received and to render appropriate account to the client regarding the retainer.[5] Although the advance payment retainer is not client property, the client retains an interest in that portion of the retainer that is not yet earned by the lawyer. Furthermore, at the conclusion of the representation the lawyer must promptly return any portion of the advance payment retainer that is not earned.[6] Finally, it would be inappropriate for a lawyer to negotiate a nonrefundable advance payment retainer with the client.[7]

---

[4] Jacobson v. Sassower, 66 N.Y. 2d 991, 993, 489 N.E. 2d 1283, 1284, 499 N.Y.S 2d 381, 382 (1985); see N.Y. State 599 ("the essence of the matter is clarity").
[5] DR 9—102 (C)(3) requires a lawyer to "maintain complete records of all funds, securities, and other property of a client or third person coming into possession of the lawyer and render appropriate accounts to the client, or third person regarding them."
[6] DR ( 102 (C)(4) (requiring a lawyer to "pay or deliver to the client or third person as requested by the client or third person the funds, securities or other properties in the possession of the lawyer which the client or third person is entitled to receive.").
[7] See DR 2-106 (C) (2)(b).

Regulation of attorneys is done by the States. Rights to practice of law and ethics related to such practice are controlled by the state. There is nothing in the bankruptcy Code which has invaded that role. Section 330 or 331 of the Code, does not supplant that practice of retainers of the state attorneys. There is a super-strong rule against federal invasion of "core state functions." Rapanos v. United States, 126 S. Ct. 2208, 2224-25 92006); Nixon v. Missouri Municipal League, 541 U.S. 125 (20040; *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994); Gregory v. Ashcroft, 501 U.S. 452, 461-64 (1991).

In *In re D.L.I.C.*, 120 B.R. 348 (Bankr.S.D.N.Y. 1990), Judge Schwartzberg held that if an advance fee remained the property of the debtor-client, it would be considered property of the debtor's estate. On the other hand, if the advance fee payment belonged to the lawyer, the debtor's estate would have no claim to it. Determination of ownership of the advance fee turned on state law. Citing State Bar Opinion 570, the court held that a New York lawyer may properly deposit advance fee payments in his general account and is not required to hold them in escrow until earned. If the money is in the lawyer's general account, "the client retains no interest in the retainer and it does not become the property of the [debtor's] estate." An advance fee payment does not remain the property of the debtor-client simply because the lawyer might, at some future time, be required to return a portion of that retainer.

Even retainers received from debtor prepetition, does not become property of the estate and they don't have to be put in the segregated account. That advance payment retainers, earned prepetition for prepetition services, need not be held in trust. <u>Barron v. Countryman, 432 F.3d 590, Bankr. L. Rep. (CCH) P 80408 (5th Cir. 2005)</u>.

Whether prepetition retainer paid to debtor's counsel is included in "property of the estate" or subject to disgorgement is function of intention of parties and state law. In re King, 392 B.R. 62 (Bankr. S.D.N.Y. 2008)

B. **Non-Debtor sourced or Pre-Petition Retainer is Not Property of the Estate.**

"The Supreme Court has made it clear that state law governs the definition of property rights in the assets of a bankrupt estate. *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). State law not only governs ownership interest, but also applies equally to security interests. *Id.* at 55, 99 S.Ct. 914. Hence, this Court must look to New York law to determine if a retainer is property of the debtor's estate." In re King, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008)

"Not all prepetition retainers paid to debtor's attorneys can be regarded as property of the estate. The court must look to state law to determine the extent of a debtor's interest in a retainer in order to resolve the issue as to whether or not the retainer is property of the estate under 11 U.S.C. § 541."In re D.L.I.C., Inc., 120 B.R. 348, 350 (Bankr. S.D.N.Y. 1990) citing *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990).

Retainers as advance payment of fees is private property of the counsel. Where In such case, the client retains no interest in the retainer and it does not become property of the estate and is subject only to disclosure under 11 U.S.C. § 329. In re D.L.I.C., Inc., 120 B.R. 348, 351 (Bankr. S.D.N.Y. 1990) citing In re McDonald Bros. Construction.

Retainer as paid was advance payment for committing the undersigned to the case and it was prepayment for the service and was not property of the estate (Non-debtor source). Type of retainer is question of fact; *see also In re DLIC, Inc.,*

7

120 B.R. 348, 351 (Bankr.S.D.N.Y.1990) cited by <u>Indian Motocycle Associates III Ltd. P'ship v. Massachusetts Hous. Fin. Agency</u>, 66 F.3d 1246, 1254 (1st Cir. 1995)

Retainer paid by Leonid Chatkhan never became property of the estate. The undersigned was careful about the fact that no money could be taken from the Debtor as the Debtor Irina Chatkhan was in bankruptcy and only upon an application under 330 or 331 would, I have been able to recoup the fees. Here if Leonid Chatkhan had not paid the retainer, I would not have represented Ms. Chatkhan, as she had no source of income and further, at that point the idea was to keep all the properties and not sell them. It was only at latter stage of this case that it was decided to sell the properties. It was the intention between the parties that the advance retainer paid would be immediately be a property of the undersigned as a consideration for immediate commitment to the case. By requiring payment from a non debtor prior to conversion of the case to Chapter 11, I avoided the issue of waiting to be paid from the estate for a substantial amount of time.

Debtor's husband made a payment under the doctrine of necessaries for legal fees, which he was legally obligated to pay. If he had not paid this fees, that property would not have been the property of the Irina Chatkhan estate. Legal fees are covered under the doctrine of necessaries. Under the doctrine of necessaries, the attorneys fees is earmarked for the attorney and does not go to the debtor. By allocating that fund for the undersigned, Leo Chatkhan divested himself of its ownership as he had sought commitment for the undersigned to perform legal services. This fees is an earned upon receipt by the undersigned, only to be disclosed under section 329 and not subject to 11 USC 330 and 331. Further not only would it not be property of the estate, it could not be characterized as a fraudulent transfer in any form, for Leonid Chatkhan was obligated to make payment. Irina chatkhan could not have commanded that payment to herself as she herself cannot become a beneficiary of legal fees.

8

"Because the debtor retains no interest in the retainer, the retainer does not become property of the estate or require a fee application to use the funds. *Id.* at 998–99. Although a classic retainer falls outside the Bankruptcy Code § 330 requirement, it is subject to disclosure and reasonableness review under § 329. *Barron*, 432 F.3d at 595. In re King, 392 B.R. 62, 70 (Bankr. S.D.N.Y. 2008).

It was an advance retainer for future commitment, it involved fees paid to the undersigned attorney for services to be rendered, upon payment it passed to counsel upon remittance at which time the debtor relinquishes all interest in the monies, as there was no express agreement for the payment to be held in a trust or escrow. Funds that are collected as advance retainers do not become property of the estate and are subject to the requirements of § 329 only. *Barron*, 432 F.3d at 596. In re King, 392 B.R. 62, 70-71 (Bankr. S.D.N.Y. 2008).

## C. **Section 330 and 331 does not Apply here to the Advance Payment Retainer or to Non-Estate Property**

It is clear that once a property is property of the estate; bankruptcy courts alone would have the jurisdiction on the property of the estate and decide it according to bankruptcy code. 28 U.S.C. 1334 (e)

Bankruptcy court alone can decide about disbursement of funds from property of the estate, as it is the only custodian of the Estate.

Bankruptcy Court applies sections 330 and 331 for the payments from Estate, however the said sections does not apply to payment from non estate resources.

United States District Court of Southern District of New York clearly ruled on this issue: "However, the procedures set forth in sections 330 and 331 need not be followed unless compensation is sought from the estate." **SEC v. Towers Fin. Corp., 1993 U.S. Dist. LEXIS 10013 citing** *In re McDonald,* 114 Bankr. at 993.

Compensation of debtor's counsel from non-estate funds is regulated by Section 329, rather than the fee application process. Section 329 contains a broad disclosure requirement that applies to all payments to attorneys, and agreement to pay attorneys, made after the case is filed or any time during the year before filling. Pursuant to this section of the Bankruptcy Code, compensation of the attorney for the debtor is scrutinized more closely than the compensation of other officers and professional persons. 2 Collier P 329.01 (1993). However, the monitoring function of Section 329 does not require that counsel obtain court approval before making use of the non estate funds. Compensation of counsel from non estate funds will not be impeded by Section 329 unless the court finds that "such determination exceeds the reasonable value of any [bankruptcy related services." In re McDonald, 114 Bankr. At 995 (quoting Section 329). Where the court finds such compensation to be excessive, it has the authority to cancel an attorney payment agreement or to order a return of funds already paid. Id.

In *Lamie v. U.S. Trustee*, the Supreme Court commented that an advance payment retainer is permissible. *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024, 42 Bankr. Ct. Dec. (CRR) 122, 50 Collier Bankr. Cas. 2d (MB) 1299, Bankr. L. Rep. (CCH) P 80038 (2004).

The Supreme Court held that § 330(a)(1) does not authorize payment of attorney's fees to the debtor's attorney unless that attorney was appointed under § 327 of the code. Lamie v. United States Trustee 124 S. Ct. 1023 (2004).
The Supreme Court stated in explcit terms, "we hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys <u>from estate funds</u>, unless they

are employed as authorized by § 327. If the attorney is to be paid from estate funds under § 330(a)(1) in a chapter 7 case, he must be employed by the trustee and approved by the court." Though the case arose in context of a Chapter 7 estate, however the principle remains the same. Estate funds are to be used only upon authorization under section 330 or 331.

It is further made clear from the following language in the statute that it deals only when the source of that property is estate.

The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, **may order the return of the excess to the estate**. 11 U.S.C. 330 (a)(5).

It is clear that expression of one thing, Estate, suggests the exclusion of others. Hinck v. United States, 127 S.Ct. 2011, 2015 (2007); TRW, Inc. v. Andrews, 534 U.S. 19 (2001); City of Chicago v. Environmental Def. Fund. 511 U.S. 328 (1994); United States v. Smith, 499 U.S. 160 (1991); Mississippi Band of Choctaw Indians. V. Holyfield, 490 U.S. 30, 46-47 & n. 22 (1989); Chan v. Korean Airlines, Ltd., 490 U.S. 122, 133-34 (1989).

One cannot read section 330 or 331 to apply to those payments that which are not coming from Estate. The broader policy here is the protection of the estate property, to avoid dissipation or protection of the debtor. Section 329 achieve that policy by evaluating the performance of professional and the matching of value provided to the case with consideration paid. So one cannot read 330 and 331 to subsume, professionals paid from non-estate resources. One must avoid broad reading of statutory provision if Congress has specifically provided for the broader policy in more specific language elsewhere (here in 329). Arlington Cent. Sch. Dist. Bd. Of Edc. V. Murphy, 126 S. Ct. 2455, 2461-63 (2006); Jama v. Immigration &

Customs Enforcement, 543 U.S. 335 (2005); Custis v. United States, 511 U.S. 485, 491 (19940; West Virginia Univ. Hosps v. Casey, 499 U.S. 83, 99 (1991).

In the Code sections dealing with the payment of the professionals, from non-estate sources, section 330 and 331 has no application. Nor have these section supplanted the State recognized retainers property rights issues. Since it deals with state property issues, section 330 and 331 has to be given a narrow reading, Cipollone v. Liggett Group, 505 u.S. 504, 516 (1992); in order to override state law and to look for a clear statement that Congress means to preempt state law. New York State Department of Social Services v. Dublino, 413 U.S. 405, 413 (1973).

It is clear section 330 and 331 of the Code has no application when the sources of fund is non-estate. I do not need to seek court permission to use funds derived from non-estate source, however I am definitely answerable to the court on the issue of section 329. My services to the case have been very good and has benefitted the estate and the debtor. Little funds that we get are the lifeline of our office, if that is snapped, it causes undue hardship. Here in the given scenario, the undersigned acted in conformity with law and regulation and with highest integrity in honesty and transparency.

Yours sincerely:

Karanvir S. Dahiya, Esq.

*Sorry about the typos etc, just wanted to speak my mind, you could send a copy to the Chambers of Judge,*

12