UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

                                          Chapter 11

    Irina Chatkhan,

                                          Case No. 09-51286-CEC

                    Debtor.

---------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Karamvir Dahiya, Esq. | Bruce Weiner, Esq. |
| Dahiya Law Group LLC | Rosenberg, Musso & Weiner, LLP |
| 350 Broadway, Ste. 412 | 26 Court St., Ste. 2211 |
| New York, NY 10013 | Brooklyn, NY 11242 |
| Former Counsel for the Debtor | Counsel for Roman Narovlianski and Semyon Gutarts |
| William E. Curtin, Esq. | Camille Bent, Esq. |
| Office of the United States Trustee | Knuckles, Komosinski & Elliott, LLP |
| 271 Cadman Plaza East, Ste. 4529 | 565 Taxter Rd., Ste. 590 |
| Brooklyn, NY 11201 | Elmsford, NY 10523 |
| | Counsel for Emigrant Mortgage Company, Inc. |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the application of Dahiya Law Group LLC ("DLG"), former counsel to Irina Chatkhan ("Irina" or the "Debtor"), for final allowance of fees of $171,774.00 and reimbursement of expenses of $2,930.15 (the "Fee Application"). The Fee Application was opposed by the United States Trustee ("UST"), Emigrant Mortgage Company, Inc. ("Emigrant"), Roman Narovlianski, and Semyon Gutarts (together with Roman Narovlianski, "N&G"). For the following reasons, the Fee Application is granted to the extent that DLG shall be reimbursed $765 for the fee to convert this case to chapter 11. The remainder of the Fee Application is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (B) and 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## Background

The following facts are undisputed.

### I.    Irina Chatkhan's Bankruptcy Case and Retention of Dahiya

On December 22, 2009, the Debtor, *pro se*, filed a voluntary petition under chapter 13 of the Bankruptcy Code.[1] On February 22, 2010, Karamvir Dahiya, Esq. ("Mr. Dahiya") of Dahiya Law Offices LLC filed a notice of appearance on the Debtor's behalf.

On April 14, 2010, upon the Debtor's motion, the Court issued an order converting this case to one under chapter 11 of the Bankruptcy Code.

---

[1] This is the Debtor's second bankruptcy filing. Her first chapter 13 case was filed, *pro se*, on October 14, 2009 and automatically dismissed, effective November 30, 2009, pursuant to 11 U.S.C. § 521(i). (Case No. 09-49029-CEC)

On May 3, 2010, the Debtor, by Mr. Dahiya, filed a statement of financial affairs disclosing that, in December 2010,[2] Leo Chatkhan paid a $15,000 retainer to Dahiya Law Offices LLC. (Stmt. of Fin. Affairs, Case No. 09-51286, ECF No. 28 at 21.)

Also on May 3, 2010, Mr. Dahiya, on behalf of Dahiya Law Offices LLC, filed a statement pursuant to Bankruptcy Rule 2016(b) (the "Bankruptcy Rule 2016(b) Statement") disclosing that he agreed to accept payment of $15,000 for services rendered or to be rendered in connection with Irina's bankruptcy case. (Bank. R. 2016(b) Stmt., Case No. 09-51286, ECF No. 28 at 26.) The Bankruptcy Rule 2016(b) Statement further stated that nothing was previously paid to Mr. Dahiya, and that the balance owed was $15,000. (Bank. R. 2016(b) Stmt., Case No. 09-51286, ECF No. 28 at 26.) Mr. Dahiya also stated that Leo Chatkhan was the source of all payments previously paid and to be paid for compensation. (Bank. R. 2016(b) Stmt., Case No. 09-51286, ECF No. 28 at 26.)

On June 15, 2010, the Debtor filed an application to retain DLG as counsel pursuant to §§ 327 and 328[3] (the "Retention Application"). DLG disclosed in the Retention Application that the firm received a $15,000 retainer, which was paid by the Debtor's husband's businesses.[4] (Retention Appl. ¶¶ 14(e), 17, Case No. 09-51286, ECF No. 36) The Retention Application stated that compensation and reimbursement of expenses would be sought pursuant to "section[s] 328, 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court," and that DLG "shall make applications for the payment and allowance of fees and disbursements, pursuant to 11 U.S.C. §§ 328, 330 and 331 and Fed. R. Bankr. P. 2016." (Retention Appl. ¶¶ 14, 16, Case No. 09-51286, ECF No. 36.)

---

[2] This appears to be a typographical error because the Statement of Financial Affairs was filed months before December 2010.
[3] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, title 11 U.S.C.
[4] The declaration in support of the Retention Application states that the retainer was paid by the Debtor's husband, rather his businesses. (Decl. in Supp. ¶ 10, Case No. 09-51286, ECF. No. 36-1.)

On August 3, 2010, the Debtor, by Mr. Dahiya, filed an amended Statement of Financial Affairs, which again disclosed that, in December 2010, Leo Chatkhan paid $15,000 to Dahiya Law Offices LLC. (Amended Stmt. of Fin. Affairs, Case No. 09-51286, ECF No. 49 at 19.)

On October 15, 2010, Leonid Chatkhan filed an affidavit in support of the Retention Application, stating that, in April, he paid DLG $15,000 from his business. (Leonid Aff. ¶2, Case No. 09-51286, ECF No. 75.)

On November 3, 2010, the Court issued an order authorizing the Debtor to retain DLG as counsel pursuant to § 327(a) (the "Retention Order"). The Retention Order provides:

> [I]t is further ORDERED, that the compensation to be paid to DLG shall be ~~in accordance with the terms stated in the annexed Motion~~ ***upon application and subject to approval by the Court pursuant to 11 U.S.C. §§ 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and the E.D.N.Y. Local Bankruptcy Rules (CEC)***.[5]

(Retention Order, Case No. 09-51286, ECF No. 90.)

II.     Leonid Chatkhan's Bankruptcy Case and the Adversary Proceeding against Mr. Dahiya

On July 19, 2010, Leonid Chatkhan ("Leonid"), Irina's husband, filed a voluntary petition under chapter 11 of the Bankruptcy Code. (Case No. 10-46775-CEC.) Leonid owned several businesses that owned and operated laundromats in Brooklyn and Queens.

On October 20, 2010, on the motion of the UST, the Court issued an order converting Leonid's case to one under chapter 7 of the Bankruptcy Code. Robert L. Geltzer ("Mr. Geltzer") was appointed chapter 7 trustee of Leonid's bankruptcy estate. In the course of administering Leonid's bankruptcy case, Mr. Geltzer filed bankruptcy petitions on behalf of five of Leonid's businesses, which cases were consolidated with Leonid's.

---

[5] The stricken provisions were contained in the proposed order, but the Court did not grant that relief. Rather, the Court modified the order with the provisions that are bold, italicized, and underlined.

On January 19, 2011, Mr. Geltzer commenced an adversary proceeding against Mr. Dahiya seeking to recover the $15,000 retainer paid by Leonid. Mr. Geltzer alleged that, because DLG is counsel solely to Irina, Leonid received no consideration in exchange for funding DLG's retainer, and therefore, the payment is avoidable as a fraudulent conveyance pursuant to § 548, and is recoverable pursuant to §§ 550 and 551. Mr. Geltzer also alleged that the funds used to pay the retainer are property of Leonid's estate pursuant to § 541 and must be turned over pursuant to § 542. On March 9, 2011, Mr. Geltzer filed an amended complaint naming DLG as a defendant in the adversary proceeding.

At a pre-trial conference held on July 21, 2011, Mr. Dahiya disclosed that he applied the retainer to his fees without seeking, or obtaining, authorization as mandated by the Retention Order. (Tr.[6] 7/21/11 at 5-8, Adv. Pro. No. 11-1017, ECF No. 29.) The Court directed DLG to disgorge the retainer and place it in escrow pending a determination whether DLG is entitled to an award of compensation and reimbursement of expenses, and pending the conclusion of the adversary proceeding. In furtherance of that directive, on August 2, 2011, the Court issued an order directing Mr. Dahiya to deposit $15,000 into the Court's registry no later than August 3, 2011, which he complied with. (Case No. 09-51286, ECF No. 135; Docket entry dated Aug. 3, 2011.)

III.   UST's Motion to Disqualify DLG as Counsel and the Fee Application

On August 31, 2011, the UST filed a motion seeking to disqualify DLG as counsel to the Debtor on the basis that DLG applied the retainer without court authorization.

On September 14, 2011, Mr. Dahiya sought to be relieved as counsel on the basis that his ability to provide effective representation to the Debtor was jeopardized in light of the pending adversary proceeding and the UST's motion.

---

[6] "Tr." relates to the transcript of hearing held on the date specified.

On September 21, 2011, the Court issued an order authorizing DLG to withdraw as counsel to the Debtor, without prejudice to its right to seek compensation pursuant to §§ 330 and 331, or to the right of any party in interest to object thereto.

On November 29, 2011, DLG filed the Fee Application seeking final allowance of fees in the amount of $171,774.00 and reimbursement of expenses in the amount of $2,930.15.

The UST objected to the Fee Application, arguing that the Fee Application should be denied in its entirety because DLG applied the retainer without court authorization. Alternatively, the UST requested that DLG's fees be reduced by $81,488.27 because some of the services for which DLG seeks compensation were outside the scope of the retention, for example, defending the adversary proceeding, and because DLG spent excessive time on other services, such as researching issues with respect to the validity of the secured claims against the estate. The UST further sought disallowance of $17,600.02 in fees where DLG's corresponding time entries "are so vague that they render it impossible to determine precisely what work was performed and whether that work benefitted the estate." (UST Objection at 14, Case No. 09-51286, ECF No. 171.) The UST argued that DLG's fees should be further reduced by $51,306.70 because DLG "lumped time" and "failed to properly subdivide numerous time entries by discrete activity performed where such activities exceed a half-hour." (UST Objection at 15, ECF No. 171.) The UST also sought disallowance of DLG's expenses because it is not possible to determine from the Fee Application whether these expenses were either actual or necessary.

N&G join in the UST's objection, and add that the estate does not have the funds to pay the amounts sought in the Fee Application, because the only assets of the estate are three cooperative apartments, which are fully encumbered by liens held by N&G and other secured

creditors. Similarly, Emigrant objects to the Fee Application to the extent payment of DLG's fees would prevent the complete satisfaction of Emigrant's lien against one of the apartments.

Legal Standard

Compensation of professionals retained under § 327, including a chapter 11 debtor's attorney, is governed by § 330. That section provides, in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>   (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>   (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

A debtor's attorney is also subject to the requirements of § 329(a), which provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). The phrase "in connection with the case" used in § 329(a) extends to services that will impact the bankruptcy case. Cohn v. U.S. Trustee (In re Ostas), 158 B.R. 312, 321 (N.D.N.Y. 1993) (quoting In re Rheuban, 121 B.R. 368, 378 (Bankr. C.D. Cal. 1990)).

Bankruptcy Rule 2016(b) implements § 329(a) by requiring a debtor's attorney to file the statement required by that section within 14 days after days after the order for relief. That rule

further obligates the attorney to file a supplemental statement "within 14 days after any payment or agreement not previously disclosed." Fed. R. Bank. P. 2016(b). Additionally, Bankruptcy Rule 2017(b) authorizes the Court to review all payments made to an attorney after the order for relief "for services in any way related to the case." Fed. R. Bank. P. 2017(b).

Discussion

I.    DLG was not permitted to apply the retainer without court approval.

DLG argues that court authorization, and approval pursuant to § 330, was not required prior to applying the retainer because the retainer was an advance payment retainer under New York law, and because Leonid funded the retainer. As such, DLG argues, the retainer was not property of the estate and therefore falls outside the scope of § 330. The UST argues that, even if the retainer was not property of the estate, DLG was nonetheless required to obtain court approval before applying the retainer.

"A prepetition retainer becomes property of the estate only when, under applicable state law, the debtor has an interest in the retainer at the time of filing." SEC v. Towers Fin. Corp., Case no. 93 Civ. 0744 (WK), 1993 WL 276935 at *4 (S.D.N.Y. July 21, 1993); see also In re King, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008). Retainers fall into three categories: advance payment, classic, and security. An advance payment retainer "involves fees paid to an attorney for services to be rendered, but the payment passes to counsel upon remittance at which time the debtor relinquishes all interest in the monies, unless there is an express agreement for the payment to be held in a trust or escrow." King, 392 B.R. at 70-71. "A 'classic' retainer secures an attorney's availability over a certain period of time as opposed to being compensation for services rendered." Id. at 70. "When a classic retainer is paid, the attorney earns the entire amount and the client retains no interest in the funds." Id. A security retainer "secure[s]

payment of fees for prospective services," and therefore the client retains an interest in the retainer until the services are provided. Id.  All three types of retainers are subject to the disclosure and reasonableness requirements set forth by § 329. Id. at 70-71.

DLG argues that, because the firm received an advance payment retainer, court approval was not required as a prerequisite to application of the retainer to the firm's fees.  However, DLG bears the burden of proof on this issue, Howard v. High River Ltd. P'ship, 369 B.R. 111, 115 (S.D.N.Y. 2007), and has not provided the retainer agreement or any testimony to substantiate its contention that the retainer was an advance payment retainer.  Given the complete lack of evidentiary support for this contention, it cannot be concluded that the retainer given to DLG was an advance payment retainer.

DLG argues that the retainer is not property of Irina's estate for the additional reason that it was funded by Leonid, or his businesses.  It is undisputed that the Debtor did not fund DLG's retainer.  Assuming, without deciding, that the retainer was not property of the estate, DLG was nonetheless obligated to comply with § 329, Bankruptcy Rule 2016(b), and the Retention Order.

Bankruptcy Rule 2016 directs an attorney to file the statement required by § 329 disclosing "the compensation paid or agreed to be paid . . . for services rendered or to be rendered . . . in connection with the case by such attorney, and the source of such compensation" within 14 days of the order for relief.  11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b).  The attorney must file a supplemental statement "after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b).  This statement must be filed whether the debtor or a third party is responsible for payment of the fees.

DLG failed to adequately disclose the compensation paid or agreed to be paid, and the source of such compensation, in accordance with § 329 and Bankruptcy Rule 2016(b) within 14

days of the order converting this case.[7] The Bankruptcy Rule 2016(b) Statement does not disclose the retainer at all; it states that the compensation agreed to be paid for the work in Irina's bankruptcy case was $15,000, and that no portion of that amount had been paid.[8] (Bankruptcy Rule 2016(b) Statement, Case No. 09-51286, ECF No. 28 at 26.)  Although the payment of the retainer was disclosed in other filings,[9] the record remains unclear as to the source of the retainer: the Statement of Financial Affairs, the Amended Statement of Financial Affairs, the declaration in support of the Retention Application, and the Fee Application state that the retainer was paid by Leonid (Stmt. of Fin. Affairs, Case No. 09-51286, ECF No. 28 at 21; Amended Stmt. of Financial Affairs, Case No. 09-51286, ECF No. 49 at 19; Decl. in Supp. ¶ 10, Case No. 09-51286, ECF. No. 36-1; Fee Application ¶ 45, Case No. 09-51286, ECF No. 168), but the Retention Application and Leonid's affidavit states that Leonid's businesses funded the retainer (Retention Application ¶¶ 14(e), 17, Case No. 09-51286, ECF No. 36; Leonid Aff., Case No. 09-51286, ECF No. 75 ¶ 2).[10]  If the retainer was, in fact, paid by Leonid's business, DLG has not disclosed which of Leonid's businesses funded the retainer.  It is also unknown when the retainer was paid: the Statement of Financial Affairs and the Amended Statement of Financial Affairs state that the retainer was paid by Leonid in December 2010, but Leonid's affidavit states

---

[7] Pursuant to § 348, the conversion of this case from chapter 13 to chapter 11 constituted an order for relief.  11 U.S.C. § 348(a).

[8] The Bankruptcy Rule 2016(b) statement was filed by Mr. Dahiya on behalf of Dahiya Law Offices LLC, and not on behalf of DLG.  (Bankruptcy Rule 2016(b) Statement, Case No. 09-51286, ECF No. 28 at 26.)

[9] The obligation to disclose the retainer in compliance with § 329 and Bankruptcy Rule 2016(b) is not satisfied or excused by disclosing the retainer in other filings.  In re TJN, Inc., 194 B.R. 400, 402-404 (Bankr. D.S.C. 1996) (counsel's failure to file a supplemental Bankruptcy Rule 2016(b) statement was not excused by disclosing additional payment of retainer in its fee application).

[10] It is also unclear whether the retainer was paid to DLG or another entity controlled by Mr. Dahiya.  The Statement of Financial Affairs and the Amended Statement of Financial Affairs state that $15,000 was paid to Dahiya Law Offices LLC (Stmt. of Fin. Affairs, Case No. 09-51286, ECF No. 28 at 21; Amended Stmt. of Financial Affairs, Case No. 09-51286, ECF No. 49 at 19), but the Retention Application states that retainer was paid to DLG (Retention Application ¶¶ 14(e), 17, Case No. 09-51286, ECF No. 36).  The Fee Application, which was filed by "Dahiya Law Offices LLC or Dahiya Law Group LLC," states that the retainer was paid to the "Applicant's [sic]." (Fee Application ¶ 45, Case No. 09-51286, ECF No. 168).  The Retention Order only authorized the retention of DLG.  (Retention Order, Case No. 09-51286, ECF No. 90.)

that his business paid it in April.  (Compare Stmt. of Fin. Affairs, Case No, 09-51286, ECF No. 28 at 16 and Amended Stmt. of Financial Affairs, Case No. 09-51286, ECF No. 49 at 19 with Leonid Aff. ¶2, Case No. 09-51286, ECF No. 75.)  Additionally, DLG failed to file a supplemental statement pursuant to Bankruptcy Rule 2016(b) disclosing when the firm drew against the retainer.

Failure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel.  E.g., Henderson v. Kisseberth (In re Kisseberth), 273 F.3d 714, 721 (6th Cir. 2001) ("To ensure [protection of both creditors and debtors against overreaching attorneys], bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules"); Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997); Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees."); In re Chez, 441 B.R. 724, 731 (Bankr. D. Conn. 2010) ("Indeed, it has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions . . . .") (alterations in original) (quoting In re Laferriere, 286 B.R. 520, 526–27 (Bankr. D. Vt. 2002) quoting Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp., 655 F.2d 463, 469 (2d Cir. 1981))); In re Parklex Assocs., Inc., 435 B.R. 195, 210-211 (Bankr. S.D.N.Y. 2010) (denying fee application because counsel failed to adequately disclose source of retainer); In re Gage, 394 B.R. 184, 192 (Bankr. N.D. Ill. 2008) ("Failure to disclose (in this case *fully* disclose) is sanctionable and can include partial or total denial of compensation, as well as partial or total disgorgement of fees already paid. . . .  Many courts, perhaps the majority, punish defective disclosure by denying all

compensation." (citations omitted)). This is true whether the fees were paid by the debtor or third party. Kisseberth, 273 F.3d at 719 ("'[A]ny payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment.'" (quoting In re Walters, 868 F.2d 665, 668 (4th Cir. 1989))).

While a more "technical breach" of the attorney's obligations under the Bankruptcy Code and the Bankruptcy Rules may not warrant denial of all compensation, it is clear that a finding of willfulness is not required; "[d]isgorgement may be proper even though the failure to [comply with the Code and Rules] resulted ... from negligence or inadvertence." Vergos v. Mendes & Gonzales PLLC, In re McCrary & Dunlap Const. Co., LLC), 79 F. App'x 770, 779 (6th Cir. 2003) (alteration in original) (quoting Kisseberth, 273 F.3d at 721). Here, DLG's violation of the requirements of § 329 and Bankruptcy Rule 2016 was far more serious than a "technical breach." The Bankruptcy Rule 2016(b) Statement failed entirely to disclose the prepetition retainer, and was never amended or supplemented to disclose either the retainer or the date it was drawn down. Moreover, the source of DLG's retainer - whether it was Leonid, or one of his corporate entities, and if so which entity - has never been disclosed by DLG.

Under these circumstances, denial of compensation is warranted. As explained by the Ninth Circuit:

> A fee applicant must disclose "the precise nature of the fee arrangement," and not simply identify the ultimate owner of the funds. See In re Glenn Elec. Sales Corp., 99 B.R. 596, 600 (D.N.J. 1988); see also In re Bob's Supermarket's, Inc., 146 B.R. 20, 25 (Bankr. D. Mont. 1992) ("'[D]ebtor's counsel [must] lay bare all its dealings . . . regarding compensation. . . . Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures . . . are not sufficient.'") (quoting In re Saturley, 131 B.R. 509, 516-17 (Bankr. D. Me. 1991)), aff'd in part and rev'd in part, 165 B.R. 339 ([B.A.P. 9th Cir.] 1993); In re Plaza Hotel

> Corp., 111 B.R. 882, 883 (Bankr. E.D. Cal. [1990]) ("the duty is one of complete disclosure of *all facts*") (emphasis added), aff'd, 123 B.R. 466 ([B.A.P. 9th Cir.]1990); In re B.E.S. Concrete Prods., Inc., 93 B.R. 228, 237 (Bankr. E. D. Cal. 1988) ("The burden is on the person to be employed to come forward and make *full, candid, and complete disclosure*.") (emphasis added).
>
> The disclosure rules are applied literally, even if the results are sometimes harsh. See In re Plaza Hotel, 111 B.R. at 883. Negligent or inadvertent omissions "do not vitiate the failure to disclose." In re Maui 14K, Ltd., 133 B.R. 657, 660 (Bankr. D. Haw. 1991); In re Coastal Equities, Inc., 39 B.R. 304, 308 (Bankr. S.D. Cal. 1984). Similarly, a disclosure violation may result in sanctions "regardless of actual harm to the estate." In re Maui 14K, 133 B.R. at 660.

Park-Helena, 63 F.3d at 881.

In addition to DLG's noncompliance with § 329 and Bankruptcy Rule 2016(b), DLG also violated the terms of the Retention Order, which provides that "compensation to be paid to DLG shall be . . . upon application and subject to approval by the Court pursuant to 11 U.S.C. §§ 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and the E.D.N.Y. Local Bankruptcy Rules." This constitutes another basis upon which to deny DLG's application for approval of fees and reimbursement of expenses. See Miller v. U.S. Trustee (In re Indep. Eng'g Co.), 232 B.R. 529, 532 (B.A.P. 1st Cir. 1999) (affirming the disgorgement of fees because counsel drew against retainers notwithstanding the court's order requiring him to obtain prior court approval for any compensation), aff'd, 197 F.3d 13 (1st Cir. 1999); Parklex, 435 B.R. at 208-209 (denial of fee application was warranted when counsel retained on interim basis violated the Bankruptcy Code and interim retention order by spending retainer without court approval). DLG's argument that the Retention Order is ambiguous is rejected. The provision of the Retention Order mandating court approval prior to payment of DLG's fees is clear. In any event, DLG could

13

have sought clarification if the firm was unclear about its obligations under the Retention Order. See Indep. Eng'g Co., 232 B.R. at 533.

DLG argues that § 329 is inapplicable to this matter because it governs the denial or reduction of excessive fees, and does not provide a basis to deny reasonable fees. This argument is also without merit. A bankruptcy court may deny an attorney all compensation based upon the failure to satisfy § 329(a) and Rule 2016(b), and need not find that the fees requested are excessive. Lewis, 113 F.3d at 1045; In re Gore, Case No. 07-21103REF, 2008 WL 5049915, at *8 (Bankr. E.D. Pa. Nov. 25, 2008).

For these reasons, DLG's request for final allowance of fees of $171,774.00 and reimbursement of expenses of $2,165.15 is denied.[11] However, DLG's request for reimbursement of the $765 court fee for the conversion of this case from chapter 13 to chapter 11 is granted. There is no basis to require DLG to fund the Debtor's conversion fee in this case.

---

[11] It must be noted that, even if the Fee Application were granted in its entirety, the $15,000 retainer is the only available source to satisfy any compensation award. The estate's only assets, i.e., the cooperative apartments, are fully encumbered, and therefore, the sales proceeds could not be used to satisfy any award of DLG's fees or expenses. DLG has not filed a motion under § 506(c) to obtain payment from the proceeds of the sale. In any event, only the Debtor has standing to seek that relief. See 11 U.S.C. § 506(c) ("The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ."); Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000) (holding that the right to assert a claim under 506(c) belongs to the trustee, and not to the administrative creditor seeking payment); 11 U.S.C. § 1107 (subject to exceptions inapplicable here, a debtor-in-possession has the rights and powers of a trustee).

<u>Conclusion</u>

For the foregoing reasons, DLG's Fee Application is denied in part and granted in part.

A separate order will issue.



**Dated: Brooklyn, New York**
**March 5, 2012**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**